**EDELSBERG LAW, P.A.**
Scott Edelsberg, State Bar No. 330990
scott@edelsberglaw.com
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (310) 438-5355

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| DARRYL ROBINSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BAYER CORPORATION, BAYER HEALTHCARE LLC, and BAYER HEALTHCARE PHARMACEUTICALS INC.<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# **Table of Contents**

I.    Introduction.................................................................................1

II.    Parties......................................................................................2

III.    Jurisdiction and Venue. .................................................................3

IV.    Divisional Assignment. ............................... **Error! Bookmark not defined.**

V.    Facts. ........................................................................................4

    A.    Defendants make, market, and sell Non-Drowsy Alka-Seltzer Products prominently labeled "Non-Drowsy." ...................................4

    B.    The Non-Drowsy Alka-Seltzer Products cause drowsiness.................8

    C.    Defendants' Non-Drowsy representations are misleading to reasonable consumers............................................................9

    D.    Class Action Allegations.................................................14

VI.    Claims. ....................................................................................16

VII.    Jury Demand.............................................................................24

VIII.    Prayer for Relief. ........................................................................24

COMPLAINT
Case No.

## I.    Introduction.

1.    Defendants make, sell, and market Alka-Seltzer branded "Non-Drowsy" over-the-counter cold and flu medicine that contain the active ingredient Dextromethorphan Hydrobromide ("DXM") and state prominently on the front of their label that they are "Non-Drowsy." [1]

2.    Defendants' Non-Drowsy Alka-Seltzer Products state prominently on the front of their label that they are "Non-Drowsy" products (juxtaposed against Defendants' nighttime versions that have no such claim and that are known to cause drowsiness).  By prominently labeling these products as "Non-Drowsy," Defendants led Plaintiff and other reasonable consumers to believe that the Non-Drowsy Alka-Seltzer Products do not cause drowsiness, and that drowsiness cannot be a side effect of those products.

3.    But the truth is that products containing DXM—and thus the Non-Drowsy Alka-Seltzer Products— can cause drowsiness, and drowsiness is a common side effect of DXM. In this way, Defendants misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy Alka-Seltzer Products.

4.    In fact, after using Non-Drowsy Alka-Seltzer Product as directed on the packaging during his work day, Plaintiff unexpectedly experienced drowsiness.  He

_____

[1] Throughout this Complaint, Alka-Seltzer products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy Alka-Selzer Products." Specifically, the Non-Drowsy Products include: Alka-Seltzer Plus – Severe Cold PowerFast Fizz Non-Drowsy Citrus Effervescent Tablets; Alka-Seltzer – Severe Cold PowerFast Fizz Day Non-Drowsy Citrus Effervescent Tablets, Alka-Seltzer Plus – Cold & Flu PowerMAX Gels Day Non-Drowsy, Alka-Seltzer Plus – Maximum Strength Cold & Flu Day Non-Drowsy Liquid Gels; Alka-Seltzer Plus – Cold Day Non-Drowsy Effervescent Tablets, Alka-Seltzer Plus – Severe Cold PowerFast Fizz Day Non-Drowsy Citrus Effervescent Tablets; Day/Night Severe Cold and Flu (combo pack); and Alka-Seltzer Plus – Cough, Mucus & Congestion PowerMAX Gels Day Non-Drowsy.

would not have purchased or paid as much for a Non-Drowsy Alka-Seltzer Product had he known that it could cause drowsiness.

5.    Defendants' misrepresentations allowed them to overcharge Plaintiff and other consumers for the Non-Drowsy Alka-Seltzer Products.

## II.    Parties.

6.    Plaintiff Darryl Robinson is a citizen of California (domiciled in Ventura County, California).  In or around February 2022, Plaintiff last purchased a Non-Drowsy Alka-Seltzer Plus Product (Alka-Seltzer Plus Severe Cold Day/Night Pack PowerFast Fizz Tablets) at a Walgreens in Oxnard, California.   The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when purchasing the product and used it.  But when Plaintiff took the recommended dose of the medication as directed on the label by Defendants, he became unexpectedly drowsy.  Plaintiff was not on any other medication that would have caused drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the Non-Drowsy Alka-Seltzer Product.  Plaintiff would not have bought the Non-Drowsy Alka-Seltzer Product or paid what he had for it had he known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product. The price Plaintiff paid for the Alka-Seltzer medication was inflated due to the misleading "Non-Drowsy" label, for the reasons set forth above.  In fact, because the product causes drowsiness, it was not worth the price he paid for it.  Plaintiff would purchase Non-Drowsy Alka-Seltzer Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

7.    Defendant Bayer Corporation is an Indiana corporation with its principal place of business and headquarters located at 100 Bayer Road, Bldg. 4, Pittsburgh, PA, 15205. Bayer Corporation is a subsidiary of Bayer AG, a German company and one of

2

the world's largest pharmaceutical companies. At all relevant times hereto, Bayer Corporation was engaged in manufacturing, marketing, distributing, and advertising Non-Drowsy Alka-Seltzer Products throughout the United States. Bayer Corporation created and/or authorized the false and misleading advertising and labeling of the Non-Drowsy Alka-Seltzer Products. the false and misleading advertising and labeling of the Non-Drowsy Products.

8. Defendant Bayer HealthCare LLC is a Delaware company with its principal place of business in Whippany, New Jersey. Bayer HealthCare LLC is one of the owners, manufacturers, or distributors of the Non-Drowsy Alka-Seltzer Products, and is one of the companies that created and/or authorized the false and misleading labeling for the Non-Drowsy Alka-Seltzer Products.

9. Defendant Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in Whippany, New Jersey. Bayer HealthCare Pharmaceuticals Inc. is one of the owners, manufacturers, or distributors of the Non-Drowsy Alka-Seltzer Products, and is one of the companies that created and/or authorized the false and misleading labeling for the Non-Drowsy Alka-Seltzer Products.

10. Defendants have been doing business in the State of California during all relevant times. Directly and through their agents, Defendants have substantial contacts with and receive substantial benefits and income from and through the State of California.

## III. Jurisdiction and Venue.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

12. The Court has personal jurisdiction over Defendants because Defendants sold Non-Drowsy Alka-Seltzer Products to consumers in California, including Plaintiff.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold the Non-Drowsy Alka-Seltzer Products to consumers in this District, including Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including selling the Non-Drowsy Alka-Seltzer Products to Plaintiff.

## IV. Facts.

## A. Defendants make, market, and sell Non-Drowsy Alka-Seltzer Products prominently labeled "Non-Drowsy."

14. Defendants make, market and sell the Non-Drowsy Alka-Seltzer Products. They are advertised prominently, including the front of each Non-Drowsy Alka-Seltzer Product, that the product is "Non-Drowsy." For example:

COMPLAINT
Case No.



**ALKA-SELTZER PLUS® SEVERE NON-DROWSY COLD POWERFAST FIZZ™ CITRUS EFFERVESCENT TABLETS[2]**

15.    Further, the Products are sold as "Day Non-Drowsy" products that are meant to be consumed during the day when most people are awake, and offered for sale as an alternative to Defendants' "Night" (and other products), which make no "Non-Drowsy" claim, such as the ones pictured below:

---

[2] https://www.alkaseltzer.com/plus/cold-flu/products/nondrowsy-cold-powerfast-fizz-citrus-effervescent-tablets.

COMPLAINT
Case No.



USE AS DIRECTED

**ALKA-SELTZER PLUS® SEVERE DAY & NIGHT COLD POWERFAST FIZZ™ EFFERVESCENT TABLETS[3]**



USE AS DIRECTED

---

[3] https://www.alkaseltzer.com/plus/cold-flu/products/day-night-powerfast-fizz-effervescent-tablets

6

**ALKA-SELTZER PLUS® MAXIMUM STRENGTH DAY COLD & FLU POWERMAX® GELS**

Colds don't care about the busy day you've got planned, and the distracting symptoms at every turn aren't exactly timed either. With Alka-Seltzer Plus® Maximum Strength Day Cold & Flu PowerMax® Gels, you get concentrated power in a 25% smaller pill* to help take back your day from:

- Nasal congestion
- Sinus pressure
- Sore throat
- Cough
- Headache and body ache
- Fever[4]

16.    In reality, however, the "Day Non-Drowsy" version causes drowsiness. Accordingly, if a reasonable consumer knew the truth, it would eviscerate the reason that consumers buy "Day Non-Drowsy" cold and flu relief products in the first place: to avoid drowsiness when they need to be alert.

17.    These representations are materially the same across all Non-Drowsy Alka-Seltzer Products.

18.    Based on the prominent "Non-Drowsy" and "Day" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness cannot be a side-effect of the products.

19.    Defendants labeled the products this way because they intended consumers to rely on these representations of "Non-Drowsy" and to believe that the

---

[4] https://www.alkaseltzer.com/plus/cold-flu/products/day-cold-flu-powermax-gels

7

products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.      The Non-Drowsy Alka-Seltzer Products cause drowsiness.**

20.     In truth, products containing DXM—like the Non-Drowsy Alka-Seltzer Products—do cause drowsiness, and drowsiness is a documented side effect of DXM.[5]

21.     In fact, drowsiness is a common side effect at the recommended dosages. According to a 2017 GlaxoSmithKline presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more drug takers and a "very common" side effect occurs in 10% or more drug takers.  Similarly, Pfizer's safety data sheet for DXM drugs states that "drowsiness" is a "common" adverse reaction associated with "clinical use." [6]   For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [7, 8]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even

---

[5]  Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)

[6]Pfizer, Safety Data Sheet at page 6, March 25, 2015, https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITU SSIN_DM_SYRP_4OZ.pdf ("Common adverse reactions associated with the clinical use of dextromethorphan hydrobromide include, drowsiness").

[7] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Thimapeutics 89-96 (1997).

[8]  The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Alka-Seltzer products.[9]

22.    The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side effects of dextromethorphan-containing products.[10]

23.    For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting medicines that contain "dextromethorphan," including specifically DayQuil, a cough/cold medicine similar to Non-Drowsy Alka-Seltzer Products.  Drugs like DayQuil are "antihistamine free," yet are still banned by the FAA because they have DXM that causes drowsiness[11]:

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)  guaifenesin (found in Mucinex and Robitussin) Mucinex fast-max severe congestion and cough (liquid)  Identify combo vs isolated | dextromethorphan (Delsym)  Dayquil (contains dextromethorphan)  Most "night-time" or "PM" medications contain a sedating antihistamine: - Coricidin HBP cough & cold (contains chlorpheniramine) - Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines.  If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above). |
| --- | --- | --- | --- | --- |
| Cough | | | | |

**C.    Defendants' Non-Drowsy representations are misleading to reasonable consumers.**

24.    It is misleading to label a product "Non-Drowsy" when it can cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

---

[9] For example: Alka-Seltzer Day Cold & Flu Multi-symptom Relief Liquid contains 20 mg of DXM per 30 ml of syrup and the recommended dosage is 30 ml orally every 4 hours.

[10] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")

[11] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

25.    While the Federal Regulations relating to the labelling of antitussive drug products do not require products with DM HBr to include an affirmative "drowsiness" warning, see generally, 21 C.F.R. § 341.74, Defendants could have simply omitted the false and misleading "Non-Drowsy" representations from the product labels.    By contrast, this case is about Defendants' affirmative, "Non-Drowsy" misrepresentation of its Products, not whether Defendants are required to warn whether their Non-Drowsy Alka-Seltzer Products can cause drowsiness because they contain DXM.

26.    Based on the fact that Defendants advertised the Non-Drowsy Alka-Seltzer Products as "Non-Drowsy," a reasonable consumer would expect that those products cannot cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products (much less a common side effect). Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy."[12]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."

27.    Unlike Defendants, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth.

---

[12] How to read over the counter (OTC) drug labels, Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm

COMPLAINT
Case No.



28.     Defendants could have simply omitted the false and misleading statements, "Non-Drowsy" and "Day" from its products.

29.     If Defendants wanted to say something to indicate that a Non-Drowsy Alka-Seltzer Product might cause *less* drowsiness than another product, they could have made a truthful statement to this effect, as other drug makers do.

30.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy" not that it is "Non-Drowsy":

COMPLAINT
Case No.

31.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.   Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.

32.     Because Defendants make and sell the Non-Drowsy Alka-Seltzer Products, Defendants researched the known and common side effects of DXM as required when selling a drug.  As a result, Defendants knew that DXM could cause drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" and "Day" representations, and know the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.  For these

12

reasons, Defendants knew or had reason to know that their advertising of their Non-Drowsy Alka-Seltzer Products was false and misleading, or was reckless or willfully blind to this fact.

33.    And as alleged above, Defendants intended that consumers would rely on the "Non-Drowsy" and "Day" advertising, so that consumers would purchase more products, pay a price premium, and buy them as alternatives to their "Nighttime" products.

34.    Defendants' false statements increased the demand for Non-Drowsy Alka-Seltzer Products and allowed Defendants to charge a price premium.    As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cold/cough and flu medicine that will not make them drowsy (e.g., during the day, at work or while driving).    As a result, Defendants were able to charge more for these products than they would have been able to had the advertising been truthful.    Accordingly, as a direct result of Defendants' false statements, Defendants were able to charge a price premium for these products.    As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

35.    In addition, because the Non-Drowsy Alka-Seltzer Products actually do cause drowsiness, Plaintiff and each class member did not get what they paid for: a cold/cough and flu medicine that does not cause drowsiness.    Instead, they received something that is worth less: a cold/cough and flu medicine that can cause drowsiness. Plaintiff and each class member sustained an economic injury for this additional reason, i.e., they received something worth less than the price they paid for it.

36.    Moreover, the Non-Drowsy Alka-Seltzer Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children).    As a result, the products that Plaintiff and each class member did receive in exchange for the price they paid—Non-Drowsy Alka-Seltzer Products that cause drowsiness—were not suitable for, and were thus

13

worthless for, their intended purpose.  The economic injury Plaintiff and each class member sustained consists of the entire purchase price of the products, because what they received was worthless for its intended use.

**D.     Class Action Allegations.**

37.     Plaintiff brings certain claims on behalf of a subclass of consumers who live in the identified states (the "**Consumer Protection Subclass**").

38.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Alka-Seltzer Products in California (the "**California Subclass**").

39.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

40.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy Alka-Seltzer Products, there are millions of proposed class members.

***Commonality***

41.     There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy Alka-Seltzer Products cause drowsiness;

- Whether Defendants' labeling of the Non-Drowsy Alka-Seltzer Products as "Non-Drowsy" and "Day" is deceptive and misleading;

- Whether Defendants violated state consumer protection statutes;

- Whether Defendants committed a breach of express warranty; and

- Damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

42. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Non-Drowsy Alka-Seltzer Products.

*Predominance and Superiority*

43. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

44. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendants' "Non-Drowsy" labeling is false and misleading.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## V.    Claims.

### Count I: Violations of California Consumer Protection Law and Materially-Similar State Consumer Protection Laws
**(on behalf of Plaintiff and the Consumer Protection Subclass and in the alternative the California Subclass)**

46.    Plaintiff incorporates by reference each and every factual allegation set forth above.

47.    As alleged below, Plaintiff (who lives in California) brings his individual and certain subclass claims based on California consumer protection laws.   In the alternative, Plaintiff brings his claims on behalf of a California Subclass. At the motion to dismiss stage (pre-certification), him claims are governed by California law.   At certification, Plaintiff intends to certify this count on behalf of the Consumer Protection Subclass, which includes consumers who live in the states listed below:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |

COMPLAINT
Case No.

| Missouri | Mo. Rev. Stat. § 407, and the following. |
|----------|------------------------------------------|
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| Connecticut | Conn. Gen. Stat. Ann. §§ 42-110, and the following. |

48.    Each of these statutes is materially similar to California consumer protection law.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires proof of individualized reliance, or proof of Defendants' knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. Defendants' conduct violates each statute's shared prohibitions.

49.    Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendants' conduct, including the false labeling of the Non-Drowsy Alka-Seltzer Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

50.    Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.   Defendants' misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendants' misrepresentations.

51.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendants'

17

misrepresentations; or (c) they received products that were worthless for their intended purpose.

## Count II: Violation of California's Unfair Competition Law (UCL)
### (on behalf of Plaintiff and the California Subclass)

52.    Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

53.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

54.    Defendants has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

55.    Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged below and incorporated herein.  In addition, Defendants engaged in unlawful conduct by violating the California Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug labeling that is "false or misleading in any particular."

***The Fraudulent Prong***

56.    As alleged in detail above, Defendants' "Non-Drowsy" and "Day" representations were false and misleading.  Defendants' misrepresentations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

***The Unfair Prong***

57.    Defendants violated established public policy by violating the CLRA and FAL, as alleged below and incorporated herein.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and Sherman Act).

58.    The harm to Plaintiff and the Class greatly outweighs the public utility of Defendants' conduct.  There is no public utility to misrepresenting the side effects of an over-the-counter medication.  This injury was not outweighed by any countervailing

18

benefits to consumers or competition. Misleading medication labels only injure healthy competition and harm consumers.

59. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

60. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendants' representations were deceiving to reasonable consumers like Plaintiff.

61. For all prongs, Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Alka-Seltzer Products. Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

62. In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Alka-Seltzer Products.

63. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

64. Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendants' misrepresentations; or (c) they received products that were worthless for their intended purpose.

65. Plaintiff seeks an injunction and equitable restitution (in the alternative to legal relief).

### **Count III: Violation of California's False Advertising Law (FAL)**
**(on behalf of Plaintiff and the California Subclass)**

66.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

67.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

68.    As alleged more fully above, Defendants has falsely advertised Non-Drowsy Alka-Seltzer Products by falsely representing that the products cannot cause drowsiness and that drowsiness is not a side-effect of the products.

69.    Defendants' representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

70.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Alka-Seltzer Products.  Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

71.    In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Alka-Seltzer Products.

72.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

73.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendants' misrepresentations; or (c) they received products that were worthless for their intended purpose.

74.    Plaintiff seeks an injunction and equitable restitution (in the alternative to legal relief).

### Count IV: Violation of California's Consumer Legal Remedies Act (CLRA)
**(on behalf of Plaintiff and the California Subclass)**

75.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

76.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

77.    Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

78.    Plaintiff, the other members of the California Subclass, and Defendants has engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

79.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

80.    As alleged more fully above, Defendants has violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the Non-Drowsy Alka-Seltzer Products cannot cause drowsiness, and that drowsiness is not a side effect of the products, when in fact, the products can cause drowsiness.

81.    As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

82.    Defendants' representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

83.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Alka-

Seltzer Products. Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

84. In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Alka-Seltzer Products.

85. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

86. Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendants' misrepresentations; or (c) they received products that were worthless for their intended purpose.

87. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

88. CLRA § 1782 NOTICE. On June 7, 2022, a CLRA demand letter was sent to Defendants' registered agent, via certified mail (return receipt requested). This letter provided notice of Defendants' violation of the CLRA, for Plaintiff and the class, and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendants does not fully correct the problem for Plaintiff and the Class within 30 days, Plaintiff will amend to seek all available monetary relief.

## Count V: Negligent Misrepresentation
### (on behalf of Plaintiff and the California Subclass)

89. Plaintiff incorporates by reference the facts alleged above.

90. Plaintiff alleges this claim individually and on behalf of the California Subclass.

91.    As alleged in detail above, Defendants' labeling represented to Plaintiff and Subclass members that the Non-Drowsy Alka-Seltzer Products do not cause drowsiness and that drowsiness is not a side effect of these products.

92.    These representations were false. As alleged above, the Non-Drowsy Alka-Seltzer Products cannot cause drowsiness and drowsiness is a documented side effect.

93.    When Defendants made these misrepresentations, they knew or should have known that they were false. Defendants had no reasonable grounds for believing that these representations were true when made.

94.    Defendants intended that Plaintiff and Subclass members rely on these representations and Plaintiff and Subclass members read and reasonably relied on them.

95.    In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Alka-Seltzer Products.

96.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

97.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness; (b) they overpaid for the Products because the products are sold at a price premium due to Defendants' false misrepresentations; or (c) they received products that were worthless for their intended purpose.

### Count VI: Quasi-Contract / Unjust Enrichment
### (on behalf of Plaintiff and the California Subclass)

98.    Plaintiff incorporates by reference the facts alleged above.

99.    Plaintiff brings this claim in the alternative to his legal claims.

23

COMPLAINT
Case No.

100.    As alleged in detail above, Defendants' false and misleading advertising caused Plaintiff and the California Class to purchase Non-Drowsy Alka-Seltzer Products and to pay a price premium for these products.

101.    In this way, Defendants received a direct and unjust benefit, at Plaintiff's expense.

102.    Plaintiff and the California Class seek restitution.

## VI.    Jury Demand.

103.    Plaintiff demands a jury trial on all issues so triable.

## VII.    Prayer for Relief.

104.    Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Dated: June 7, 2022                    Respectfully submitted,

                                       By: */s/Scott Edelsberg*

COMPLAINT
Case No.

**EDELSBERG LAW, P.A.**
Scott Edelsberg, State Bar No. 330990
scott@edelsberglaw.com
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (310) 438-5355


*Counsel for Plaintiff*

25